Curia, per
Fhost, J.
The plaintiff declares on the bill and note, representing the same liability, that he may recover on either for which the action may be maintained.
The bill is indorsed, í£H. G. Johnson, per A. Wray, agent.” The liability of the defendant depends on the authority of Wray to make that indorsement, and the legal effect of it, if made within the scope of his authority.
The only proof of Wray’s authority, is the advertisement in the Hamburg Journal. That public notice, that Wray was the defendant's agent in every thing pertaining to his business in the mercantile line, and the conduct of the business by Wray in the store, at which the name of the defendant was exhibited on the sign board, conferred on Wray authority to bind the defendant to all contracts and engagements which were necessary or customary in the conduct of the trade. The powers of Wray, being otherwise undefined, must be ascertained by proof of the kind of mercantile business he did carry on for the de *46 fendant, and what contracts and engagements were necessary or convenient for the advantageous prosecution of it. It is required, in order to charge one with a contract, alleged to have been made by an agent, clearly to prove the agent’s authority, and that it has been strictly pursued. It was therefore incumbent on the plaintiff to supply proof of the specific powers which were incident to Wray’s agency, and to shew that the contracts declared on were within the scope of his authority. The only evidence on this subject was, that'the defendant traded in groceries ; and that the purchase and sale of cotton was a necessary incident to that business. The use of negotiable securities so universally prevails in trade, as the means of credit, that, from Wray’s general agency, his power may be inferred to make bills and notes in the defendant’s name, in payment of his liabilities in the course of business: and in like manner to take such securities in settlement of debts due; and to negotiate and discount them. But this authority of the agent to bind his principal ns a party to bills and notes, must be restricted to such as derive a consideration from liabilities contracted by the agent in the course of trade, or from the direct use and application of them for the convenience or necessities of the business.
It appears that the bill was not taken by Wray in payment of the cotton sold to Holmes ; nor was it ever transferred to Wray, or in his possession ; nor, when discounted, applied to the use of Johnson. The amount was passed to the credit of Holmes; and after paying what was due to Johnson on the cotton bili (the amount of which is not ascertained) he applied the balance to other purchases of cotton. The whole negotiation shews that the bill was discounted for the accommodation of Holmes, and that Hutchinson, the Cashier, knew it. It was drawn for the balance of the credit of ten thousand dollars which Hoi mes had obtained in bank on Mims’ indorsement; and Wray was only a temporary indorser, to be released and the bill cancelled when Mims should return to Hamburg. Holmes confirms the proof, apparent in every circumstance of the transaction, by his deposition that the bill was indorsed and *47 discounted for his accommodation. In the absence of any proof of authority for Wray to make such indorsement, derived from the course of business in Hamburg, it cannot be inferred by law from his general agency for the defendant.
The nonsuit on the bill may also be maintained on the ground that the instrument was not negotiable. It was payable in sight checks on Charleston. A principal requisite of a bill is, that it must be for the payment of money only. It cannot be for payment “in paper medium,” Lange vs. Kohne, 1 McC. 115; nor “in foreign bills,” Jones vs. Fales, 4 Mass. 245 ; nor “ in Canada money,” Thompson vs. Sloan, 23 Wend. 71. A sight check on a bank in Charleston, drawn in Savannah, is, in effect, a foreign bill of exchange. In every material particular it ful-fils the definition of a bill. The bill not being negotiable, the action cannot be maintained against the defendant as indorser.
The indorsement being ineffectual as a negotiable security, neither can the action be maintained on it as a common law agreement, by any proof of consideration which appears in the case. The proceeds of the bill when discounted, were placed to the credit of Holmes, that is, paid to him. From the money thus obtained, Holmes paid Johnson’s account. This payment by Holmes created no privity of contract between Johnson and the plaintiff. Holmes might have applied the money in any manner he chose. That a part was applied to the payment of Johnson’s debt, was the act of Holmes. The Bank did not advance to Johnson the amount of Holmes’ debt on the security of the bill, and cannot, therefore, charge him with money lent and advanced, as if the bill had been discounted for him and the proceeds paid to him or his agent.
The note was given for the debt, interest and expenses of the bill, and when paid, was to be in satisfaction of it. It was subject to the same objection to Wray’s authority to make it as the indorsement of the bill; strengthened by the fact that it was given for a larger amount than the bill, to cover the loss on other bills indorsed by Mims: and was signed by Wray expressly as surety. The bill being the *48 consideration of the note, since the action cannot be maintained on that, it must fail on the note also.
The motion is refused.
O’Neall and Evans, JJ. concurred.
Richardson, J.
Whether indorsing the bill or signing the note in the name of Johnson came within the legal agency of Wray, was a question of fact to be decided by the jury, and not to be assumed by the Judge.
If the object of Wray was to raise the money, nominally to be drawn by Holmes, but truly to cash the debt due by Holmes for the cotton ; and the money was actually so paid, (and such facts were at least inferrible,) then, neither the bill, nor note, was made merely to accommodate Holmes ; but to accommodate Johnson with ready money: and if such was the object of Wray, he acted within his agency.
But however doubtful such inference might be, the Judge ought not to have assumed that the bill and note were exclusively what is called accommodation paper, and taken the case from the jury. But should have left it to them, to decide for the plaintiff or defendant, according to their interpretation of the true object of Wray ; that is, whether to serve Johnson, or only to befriend Holmes with the name of Johnson, when Johnson had no manner of interest in the transaction.
This was a complex fact, in which the Judge had but to instruct the jury how to find the verdict, in the event of either inference, as made by themselves.
Wardlaw, J. concurred.